**Sprague v. Walter**

*James E. Beasley, William P. Murphy,* for plaintiff.
*Samuel E. Klein,* for defendants.

KREMER, *J.,* January 27, 1982—There are two motions before the court. Plaintiff, on September 23, 1981, filed a motion to compel answers by all defendants to plaintiff's interrogatories. Defendants on October 13, 1981, filed a motion for a protective order. Both motions address the issue of whether defendants must answer interrogatories as to financial status.

Plaintiff, who was then the First Assistant District Attorney of Philadelphia County, instituted this libel action in 1973. The complaint alleged a cause of action arising out of a series of allegedly libelous articles and editorials published by defendants in March and April of 1973. Plaintiff filed an amended complaint on May 15, 1974, in which he claimed punitive damages. Plaintiff has propounded interrogatories aimed at discovering defendants' financial status to aid in the preparation and presentation of the punitive damages aspect of the case. Defendants did not answer the interrogatories and plaintiff is now seeking an order of the court compelling answers. Defendants have countered by filing a motion for a protective order and they incorporate by reference their objections to the interrogatories. Plaintiff argues that defendants' objections and motion for protective order should be deemed to be untimely because no objection was made to net worth discovery at the time of the pretrial conference on July 20, 1981 and

no objection was made to the court's July 20, 1981 order that "plaintiff is granted leave to take discovery as to net worth of any defendant within 60 days from date of this memorandum." Plaintiff also contends that plaintiff's interrogatories were filed on August 7, 1981 and defendants' objections to these interrogatories were not filed until October 13, 1981, more than 30 days after the interrogatories were filed. Perhaps we could conclude that we need not consider the objections; nevertheless, we address the merits of the objections. See, Goodrich-Amram 2d, §4006(a): 7 re: effect of failure to object; waiver.

Defendants advance three arguments against the proposed discovery; (1) that discovery of the financial information sought would be an invasion of privacy and would be detrimental to the newspaper's competitive position; (2) that an award of punitive damages is precluded by the First Amendment to the United States Constitution; (3) that plaintiff is not entitled to such discovery until such time as he makes out a prima facie showing of entitlement to punitive damages.

I
PROPER ECONOMIC DISCOVERY IN A
PUNITIVE DAMAGES CASE IS NOT A
PROHIBITED INVASION OF PRIVACY

Defendants contend that discovery of financial information would be an invasion of privacy and would be detrimental to the competitive position of defendant-Philadelphia Newspapers, Inc. The purpose of punitive or exemplary damages is to punish the wrongdoer and to deter similar tortious conduct by defendant and others in the future: Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S. Ct. 2997, 41 L.Ed. 2d 784 (1975); Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A. 2d 662

(1963); Thomas v. American Cystoscope Makers, Inc., 414 F. Supp. 255 (E.D. Pa. 1976); Restatement, 2d, Torts, §908(1) and comment (a). It is the settled law of this Commonwealth that where punitive damages are an available remedy, the net worth and financial condition of a defendant is directly relevant to an assessment of the amount of damages appropriate to punish that defendant and to deter future tortious acts and malicious conduct: Ayre v. Dickstein, 337 Pa. 471, 12 A. 2d 19 (1940); Aland v. Pyle, 263 Pa. 254, 256, 106 A. 349 (1919). In accord is Restatement, 2d, Torts, §908 comment (e) which states "[t]he wealth of the defendant is . . . relevant, since the purposes of exemplary damages are to punish for a past event and to prevent future offenses, and the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person." This rule has been recognized by the Supreme Court of the United States: City of Newport v. Fact Concerts, Inc., _____ U.S. _____, 101 S. Ct. 2748, 2761, _____ L.Ed. _____ (1981). See also Thomas v. American Cystoscope Makers, Inc., supra, 267-268; U.S. ex rel Motley v. Rundle, 340 F. Supp. 807 (E.D.Pa. 1972); Hannigan v. S. Klein's Department Store, 1 D. & C. 3d 339 (1976).

In Campbell v. Triangle Publications, Inc., C. P. no. 7, June term 1962, no. 2606[1] (June 25, 1964) Judge Charles A. Waters[2], of C. P. no. 3, stated:

---

1. This unreported opinion was filed in four separate trespass actions also against United Press International, C. P. no. 6, June term 1962, no. 2602 and against National Broadcasting Co., C. P. no. 3, June term 1962, no. 2603 and Columbia Broadcasting System, Inc., C. P. no. 1, June term 1962, no. 2606.

2. This court had the honor of serving as Judge Waters' law clerk for all of his judicial tenure.

"Interrogatories Nos. 10 and 19, are addressed to the questions of each defendant's sales, profits and financial statements. It is contended such information is privileged, confidential and irrelevant. Such information is not only relevant, but essential to a claim for punitive damages. In Judson v. Tracey, Jr., 25 D. & C. 2d 97 (1962) the subject was pointedly covered as follows:

'Beyond doubt, where the pleadings aver defendant's malicious tortious conduct and claim punitive damages therefore, defendant's financial circumstances are relevant to enable the jury, under proper instructions, to consider and pass upon the allowance of punitive damages; Hughes v. Bobcock, 349 Pa. 475, 480; Thompson v. Swank, 317 Pa. 158. Thus the matter is 'relevant' under Pa.R.C.P. 4007(a). On the subject of defendant's financial condition, the prime source of information to enable plaintiff to prepare and prove that phase of her case is defendant's own testimony as to his assets and liabilities. Necessarily, then the questions and answers 'will substantially aid' in the preparation or trial of her case, or both. The only limitations upon discovery under Pa.R.C.P. 4007(a) are that the information sought be relevant, substantially aid the moving party, and not violate Pa.R.C.P. 4011; Feldman v. Seligman & Latz, Inc., 9 D. & C. 2d 394. Nothing contained in Pa.R.C.P. 4011 justifies defendant in refusing to give the information here sought. It is not privileged, nor sought in bad faith, nor excluded by any other limitations of that rule.

The information sought will also assist the plaintiff in presenting his claim for damages by enabling him to show the scope and area within which the alleged libelous statements were made and the number of people to whom the communications

were directed. No privilege or confidence attaches to the financial status of a defendant in a libel case in which a bona fide claim for punitive damages is presented."

## II
## THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION DOES NOT PRECLUDE DISCOVERY RELEVANT TO A PUNITIVE DAMAGES CLAIM

Defendants aver in their motion that an "award [of punitive damages] is precluded by the First Amendment to the United States Constitution." This is an incorrect statement of the law. In defendants' own memorandum they state that "under federal constitutional law, punitive damages can be awarded, if at all, upon clear and convincing proof of a publication made with actual knowledge of its falsity or subjective awareness of probable falsity: Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 [94 S. Ct. 2997, 41 L.Ed. 2d 784] (1975)." Gertz did not hold that punitive damages could not be awarded against a media defendant. Gertz held that a plaintiff who does not prove knowledge of falsity or reckless disregard for the truth is limited to compensation for actual injury. Where knowledge of falsity or reckless disregard thereof is proven, punitive damages are allowed by the courts. See Appleyard v. Transamerica Press, Inc., 539 F. 2d 1026 (4th Cir. 1976), cert. denied 429 U.S. 1041, 97 S. Ct. 740, 50 L.Ed. 2d 753 (1977); Goldwater v. Ginsburg, 414 F. 2d 324 (3d Cir. 1969), cert. denied 396 U.S. 1049, 90 S. Ct. 701, 24 L.Ed. 2d 695 (1970); Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A. 2d 662 (1963).

In this case plaintiff, Richard A. Sprague, was a public official at the time the alleged libel took place. Therefore, for plaintiff to recover at all, he must prove that defendants published with knowledge of falsity or reckless disregard of whether their publication was false or not: New York Times, Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed. 2d 686 (1964). If plaintiff meets this burden, the jury would be permitted to award both compensatory and punitive damages. The law is so clear that there is a right to recover punitive damages in a libel case, where malice is properly proved, that it is difficult to understand why defendants have made a First Amendment argument to the contrary.

## III
## PRE-TRIAL DISCOVERY AS TO FINANCIAL MATTERS IS ALLOWABLE AND REQUIRED WHERE THERE IS A BONA FIDE CLAIM FOR PUNITIVE DAMAGES

Defendants' final contention is that plaintiff is not entitled to financial discovery until he has made a prima facie showing of a right to recover punitive damages. Defendants cite in support of this position three lower court cases: Pater v. Tonsic, 57 D. & C. 2d 340 (1972); Baldwin v. McGrath, 8 D. & C. 3d 341 (1978): King v. Logue, 9 D. & C. 3d 137 (1978).

In Pater, Judge Davison refused to allow discovery of defendant's financial worth or condition in a motor vehicle case. The court held that punitive damages are awarded rarely in that type of case and that discovery for purposes of assessing punitive damages should not be routinely allowed, based only on unsubstantiated averments in the complaint. The court stated that a contrary ruling

would allow punitive damage claims to be used as a means of harrassing defendants or possibly invading privacy in routine motor vehicle cases.

In Baldwin, Judge Erb refused to allow discovery of financial information in a medical malpractice case at an early stage of the proceedings. The court was unwilling to pass upon the validity of the punitive damages claim until some evidence was shown to substantiate the claim.

King, the third and most recent case cited by defendants, was also a medical malpractice case. Judge Stanley Greenberg noted (at p. 139-140) that the lower courts were split, and that the appellate courts had not passed on the issue, and held that "the better rule is to allow such pretrial discovery in those instances where plaintiff has shown prima facie proof of the right to recover punitive damages. See Gierman v. Toman, 77 N.J. Superior Ct. 18, 185 A. 2d 241 (1962)." The court continued: "the rule as applied to negligence cases would deny discovery of a defendant's financial condition where plaintiff has failed to allege sufficient facts which would warrant submission of the question of punitive damages to the jury." The court held that the allegations in the amended complaint were sufficent to put the question of punitive damages before the jury, and allowed the discovery.

Even assuming that these cases represent the settled law of Pennsylvania, a close reading shows that defendants' reliance is misplaced. The King case indicates that financial discovery for the purpose of assessment of punitive damages is to be allowed when the factual allegations in the complaint would be sufficient to place the question of punitive damages before the jury. King did not hold that the judge must first evaluate the evidence revealed by other discovery and determine whether

a claim for punitive damages is supported. King held only that plaintiff must make factual allegations in the complaint which support his claim for punitive damages. Bald conclusory allegations, however, are insufficient.

In Peterman v. Geisinger Medical Center (No. 2), 13 D. & C. 3d 153 (1980), the court (President Judge Jay W. Myers) held and stated that "there is a sufficient averment of facts in the complaint to make it reasonably likely that punitive damages will be an issue at trial. In addition, the discovery proceedings in this case are essentially complete, and plaintiff's request is by no means 'premature.' "

Peterman is a rejection of defendants' suggested interpretation of King. Peterman held that the court should look to the sufficiency of the factual allegations in the complaint and is not required to review the discovery evidence. We agree that an invitation to the judge to review and pass upon the sufficiency of the discovered evidence would be an invitation to the court to invade the fact-finding province of the jury. Such an invasion would be inappropriate and unacceptable where factual disputes are to be resolved by the jury.

It must be noted that in March, 1975, Judge Cavanaugh denied a defense motion for summary judgment without prejudice and with leave to renew. Since there has been no renewal of such motion over the last six and a half years, defendants may be deemed to concede that plaintiff's claim is to be submitted to a jury.

In this case plaintiff, as a public figure, must prove malice, as defined in New York Times, Co. v. Sullivan, supra, before he can recover at all. The factual allegations of his complaint and his proofs must be sufficient to support his claim for punitive

damages as well. Anything less would subject his claim to summary judgment or to a non-suit.

We are of the opinion that the proper governing rule as to the permissibility of pretrial discovery of financial information, in a case involving a claim for punitive damages, is a consideration of all the circumstances. That includes a consideration of the pleadings, any discovery which has previously taken place and any proceedings which have not taken place. Where the pleadings and the general status and stage of the case indicate that a bona fide claim for punitive damages is presented then such pre-trial discovery must be allowed.

This is the rule indicated by Campbell v. Triangle Publications, Inc., supra, and Judson v. Tracey, supra, quoted above. In both Campbell and Judson there is an indication that the burden is on defendant to show why pertinent financial information should not be discoverable. The prima facie rule enunciated in King, placing a burden on plaintiff to first show entitlement to discovery for punitive damages purposes, is addressed to and is limited to the situation in which the inquiry involves only the pleadings.

The relevance of the information sought by plaintiff is not disputed. The very nature of plaintiff's claim requires a minimum level of proof of malice which may support a claim for punitive damages. An examination of the extensive amended complaint shows an alleged course of publication conduct which plaintiff charges was a repeated publication of matters that they either knew were entirely false or in utter and reckless disregard of truth or falsity. Defendants are charged, as a group, with knowledge of Walter's vows to defame plaintiff in the *Inquirer* and his boasts that he was "out to smear and destroy"

plaintiff. Plaintiff charges that prior to publication he called the attention of defendants to the fact that he had been officially involved in and was still officially involved in prosecuting Walter on criminal charges; and that prior to publication he placed defendants on notice of Walter's personal animosity and potential for bias. In the 77 paragraph amended complaint the plaintiff repeatedly charges that defendants committed libel per se and that they published with express malice. Therefore, the financial information requested in plaintiff's interrogatories is presently discoverable. We therefore will grant plaintiff's motion to compel answers to these interrogatories and will deny defendants' motion for a protective order.

Defendants argue that any requested financial information could be provided at trial, after plaintiff presents sufficient proof to justify submission of the issue of punitive damages to a jury. It is argued that "delaying disclosure until the time of trial will in no way prejudice plaintiff." Such a procedure, however, risks unfairness and trial disruption. Plaintiff is entitled to pre-trial discovery, not during-trial discovery. He is entitled to study, review, investigate and even challenge any information given. The convenience and welfare of one party cannot serve the purpose of denying a full and fair trial to another.

In defendants' motion for a protective order there is a contention that the only defendants as to whom there are allegations with respect to the issue of punitive damages are Walter, Pollock and the corporate defendants, and that those are the only defendants who should be required to give any financial information. It is sufficient to note that the amended complaint addresses a claim for punitive damages against all of defendants.

It must be further noted that it would be inappropriate and improper to make a ruling as to such discovery only as to certain defendants. Without entering into an extended analysis of the significance of such argument, it should be sufficient to note that it may reflect and indicate significant conflicts of interest as between different defendants. For example, some of the individual defendants, it is important to bear in mind, may be entitled to have the jury know that they do not possess substantial assets so that punitive damages would not be imposed against them just because the corporate newspaper defendant is publicly known to have very substantial assets. Such circumstances raise and present ethical questions which are for counsel for defendant to resolve.

Defendants have asserted in their motion that "the interrogatories seek disclosure of confidential personal and corporate information, disclosure of which would invade defendants' privacy and be detrimental to defendant Philadelphia Newspaper, Inc.'s competitive position." Because we respect the assertion made by defendants as to the highly competitive nature of the newspaper business, all information produced in response to plaintiff's interrogatories should be kept confidential by plaintiff's counsel until its use may be permitted at trial.

We also note in passing that the record indicates that counsel or a member of counsel's firm may be or become involved in this matter as a witness or witnesses. The ethical impropriety of a failure to withdraw at the earliest possible time should be apparent to all counsel.

Defendants have requested that this court not rule on these motions because of a pending motion for recusal of this court. We reject that suggestion

because the matter is on the eve of trial[3] and the discovery question came before the court before the motion for recusal. The discovery question was considered and decided and ordered by this court on July 20, 1981. It would be inappropriate to expect another judge to pass upon the reasons for this court's order. The motion for recusal will be timely decided and will also be accompanied by an opinion. [Editor's note: The opinion on the motion for recusal was published at 22 D. & C. 3d 564 (1982).] For the foregoing reasons we enter the following

## ORDER

And now, January 27, 1982, defendants' motion for a protective order is overruled. Plaintiff's motion to compel answers by all defendants to plaintiff's interrogatories is granted. Said interrogatories are to be answered by all defendants within 20 days from the date of this order. Counsel for plaintiff is ordered and directed to maintain the confidentiality of all information received in answer to the interrogatories on defendants' financial condition, until its use may be permitted at trial.

---

3. During the preparation of this opinion defendant Walter suffered a heart attack and was hospitalized. The court therefore granted a defense request for indefinite postponement, over the (mild) objection of the plaintiff. In the meanwhile this court proposes to bring the case to a trial posture as was indicated (without objection) at the time of the pretrial conference.